**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHELLE ORTIZ,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:98-CV-1031** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **REBECCA BRIGHT and** | : | **Magistrate Judge Abel** |
| **PAULA JORDAN,** | : | |
| | : | |
| **Defendants.** | : | |

<u>**OPINION AND ORDER**</u>

**I. INTRODUCTION**

This matter is before the Court on the following motions: (1) motion by Plaintiff,

Michelle Ortiz ("Plaintiff") to amend judgment to include attorney's fees and costs; (2) motion

by Plaintiff to amend judgment to include prejudgment interest; and (3) cross-motion by

Defendants, Paula Jordan and Rebecca Bright (collectively, "Defendants") to amend judgment to

reduce damages.  For the reasons set forth herein, the motions are **GRANTED** in part, and

**DENIED** in part.

**II. STATEMENT OF FACTS**

On September 15, 2006, the jury awarded Plaintiff[1] $625,000[2] in damages in an action

_____

[1]In September 1996, Plaintiff was convicted of aggravated assault for stabbing her husband and sentenced to one year in prison. Plaintiff was incarcerated at the Ohio Reformatory for Women ("ORW") located in Marysville, Ohio from September 1996 until her transfer to the Northeast Prerelease Center in January 1997. Plaintiff was returned to ORW in February 1997 for administrative reasons. Plaintiff was transferred to the Franklin Prerelease Center and released in May 1997.

The parties' dispute arise from Plaintiff's allegations that while at ORW, she was sexually harassed by a corrections officer.  First, Plaintiff claims that Defendant Jordan failed to

she brought, pursuant to 42 U.S.C. § 1983, against Defendants Paula Jordan and Rebecca Bright.[3] Plaintiff alleged that: (1) on November 9, 1996, Defendant Jordan had failed to protect her, in violation of the Eight Amendment; and (2) between November 12, 1996, and November 14, 1996, Defendant Bright placed her in segregation, in violation of the Fourteenth Amendment Due Process Clause.

Eight days after the jury issued its final judgment, on September 23, 2006, Plaintiff filed the motions at issue, requesting that the jury's verdict be amended to include: (1) attorney's fees and costs in the amount of $38,067.54; (2) prejudgment interest on the entire judgment in the amount of $418,570.82.[4] On October 21, 2006, Defendants filed a response and a cross motion to reduce the jury's verdict. This Court's analysis follows.

### III. STANDARD OF REVIEW

---

act in a reasonable manner to protect her from a substantial risk of harm of further sexual assaults and argues that because Defendant Jordan had sufficient knowledge that a known risk of harm could befall Plaintiff, her failure to act and take reasonable steps to protect Plaintiff contributed to Plaintiff's resulting injuries. Second, Plaintiff claims that Defendant Bright's placement of Plaintiff in solitary confinement violated her right to due process because it was retaliatory in nature and not pursuant to legitimate penological interest. *See* Jt. Proposed Final Pretrial Order at 2.

[2]The jury awarded Plaintiff actual compensatory damages of $250,000 and punitive damages in the amount of $100,000 against Defendant Bright. The jury also awarded Plaintiff actual compensatory damages of $25,000 and punitive damages in the amount of $250,000 against Defendant Jordan.

[3]Plaintiff initially claimed that Defendants, Governor George Voinovich, Shirley Rogers, Paula Jordan, Rebecca Bright, and Douglas Shultz had denied her adequate medical care, used inappropriate force, failed to protect her, and denied her due process rights. Plaintiff's claims against Defendants Voinovich, Rogers, and Shultz were dismissed from this action. In addition, Plaintiff's medical claims were dismissed.

[4]Plaintiff calculated her prejudgment interest from November 9, 1996, the date of the incident, through September 15, 2005, the date of final judgment, at a rate of 5.79% per annum.

Federal Rule of Civil Procedure 59 allows parties to move for a court to alter or amend a previously issued judgment.  *See* FED. RULE CIV. PRO. 59(e).[5]  A court may alter or amend its judgment for one of three reasons: (1) because of an intervening change of controlling law; (2) because evidence not previously available has become available; or (3) because such action is necessary to correct a clear error of law or prevent a manifest injustice.  *See Petition of U.S. Steel Corp.*, 479 F.2d 489, 494 (6th Cir. 1973).

## IV. ANALYSIS

### A. Attorney's Fees

Plaintiff's counsel, John J. Ricotta ("Ricotta"), requests that the Court amend the judgment to award him attorney's fees and costs pursuant to the "Civil Rights Attorney Fees Award Act of 1976," 42 U.S.C. § 1988[6] in the amount of $38,067.54.  Defendants did not file a motion in opposition to Plaintiff's request.

---

[5]Rule 59(e) of the Federal Rules of Civil Procedure reads, "Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."  *See* FED. RULE CIV. PRO. 59(e).

[6]The Civil Rights Attorney Fees Award Act of 1976 reads, in relevant part:

(b) Attorney's Fees - In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

*See* 42 U.S.C. § 1988(b) (2006).

According to the plain language of 42 U.S.C. § 1988, this Court, "in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." *See supra* note 6. To be a "prevailing party," a party must "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278-79 (1st Cir.1978) (finding that, in general, parties may be considered to have prevailed when they vindicate rights through a consent judgment without formally obtaining relief)). The Supreme Court has further explained that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties . . . in a way that directly benefits the plaintiffs." *Farrar v. Hobby*, 506 U.S. 103, 110-12 (1992); *see also, Citizens Against Tax Waste v. Westerville City Sch. Dist. Bd. of Educ.,* 985 F.2d 255, 257-58 (6th Cir.1993). In this case, because the jury found for Plaintiff at trial, there is no dispute that Plaintiff is a prevailing party.

The next step of the analysis is to determine whether the moving party's victory is sufficient to justify a fee award and what fee would be reasonable. *Farrar,* 506 U.S. at 114. As a threshold consideration for calculating reasonable attorney's fees, the Supreme Court has prescribed the "lodestar" method, requiring the multiplication of the "number of hours reasonably expended on the litigation times a reasonable hourly rate." *See Blanchard v. Bergeron,* 489 U.S. 87, 94 (1989) (quoting *Blum v. Stenson,* 465 U.S. 886, 888 (1984)); *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992) ("The lodestar is strongly presumed to yield a 'reasonable' fee."). "Reasonable fees" are to be calculated according to the prevailing market rates in the relevant community, taking into consideration the experience, skill, and reputation of

-4-

the attorney. *See Blum,* 465 U.S. at 895. A district court has broad discretion to determine what

constitutes a reasonable hourly rate for an attorney, and the party seeking attorney's fees bears

the burden of proof on the number of hours expended and the rates claimed. *Wayne v. Vill. of*

*Sebring,* 36 F.3d 517, 533 (6th Cir. 1994); *Blum,* 465 U.S. at 896 n.11 ("To inform and assist the

court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory

evidence-in addition to the attorney's own affidavits-that the requested rates are in line with

those prevailing in the community for similar services by lawyers of reasonably comparable

skill, experience and reputation."). There is, however, a "strong presumption" in favor of the

prevailing lawyer's entitlement to his lodestar fee. *See City of Burlington,* 505 U.S. at 562.

After calculating the "lodestar" rate, the district court may then adjust the "lodestar" to

reflect relevant considerations peculiar to the case and the result obtained. *Wayne,* 36 F.3d at

531. This step involves two questions: "First, did the plaintiff fail to prevail on claims that were

unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of

success that makes the hours reasonably expended a satisfactory basis for making a fee award?"

*Hensley,* 461 U.S. at 434. Any adjustment is governed by a set of twelve factors[7] adopted by the

Supreme Court in *Hensley. Id.* Many of these factors may be considered either in determining

---

[7]These factors are: (1) the time and labor required by a given case; (2) the novelty and
difficulty of the questions presented; (3) the skill needed to perform the legal service properly;
(4) the preclusion of employment by the attorney due to acceptance of the case; (5) the
customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the
client or the circumstances; (8) the amount involved and the results obtained; (9) the experience,
reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and
length of the professional relationship with the client; and (12) awards in similar cases. *See
Hensley,* 461 U.S. at 434 (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-
19 (5th Cir.1974)).

the basic lodestar fee and/or any adjustments thereto.  *Paschal v. Flagstar Bank,* 297 F.3d 431,

435 (6th Cir. 2002).

In support of his request for attorney's fees and expenses, Ricotta submitted an affidavit

stating that he charges $195.00 per hour for his services.  Pl.'s Motion for Atty's Fees at 5.

Further, he submitted a ten-page memorandum tracking his hours spent on Plaintiff's case, as

well as what he spent his time doing.  *Id*. at 6-16.  He claims that in the approximately six years

he spent on Plaintiff's case, he devoted approximate 193.7 hours to the matter, entitling him to

$37,771.50 in fees. *See id*. at 16.  Ricotta also claims that he had $296.04 in expenses, entitling

him a total of $38,067.54.

Defendants have not filed a response opposing Plaintiff's timely motion.  Considering

Ricotta's experience, the relevant market rate for comparable attorneys, and the fact that Ricotta

supported his request with detailed records explaining how he arrived at his calculations, the

Court finds the requested fees to be reasonable.  Accordingly, the Court **GRANTS** Plaintiff's

Motion to Amend Judgment to Include Attorney Fees and Costs.

### B. Prejudgment Interest

Plaintiff also requests that the Court amend the judgment to award her prejudgment

interest in the amount of $418,570.82 on her $625,000 award.  Pl.'s Motion at 4.  According to

Plaintiff, applying the nominal annual rate of 5.79 % per annum, her prejudgment interest would

equal $418,570.82, raising her judgment from $625,000 to $1,043,570.82.  *Id*.  Defendants

oppose Plaintiff's motion.  *See* Defs.' Opposition & Cross Motion at 1.

Prejudgment interest is compensation for a plaintiff's lost use of funds after his cause of

action accrues and before his recovery.  *See West Virginia v. United States*, 479 U.S. 305 (1987)

("'Prejudgment interest' serves to compensate for loss of use of money due as damages from time claim accrues until judgment is entered, thereby achieving full compensation for injury those damages are intended to redress."); *see also*, *Drennan v. Gen. Motors Corp.*, 977 F.2d 246 (6th Cir. 1992); *Villella v. Waikem Motors, Inc.*, 543 N.E.2d 464 (Ohio 1989).  In an action based on federal question jurisdiction, such as 42 U.S.C. § 1983, an award of prejudgment interest is committed to the sound discretion of the trial court.  *See E.E.O.C. v. Wooster Brush Co. Employees Relief Ass'n.*, 727 F.2d 566, 579 (6th Cir. 1984); *Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988 (6th Cir. 1982).

First, Defendants contend that Plaintiff is not entitled to prejudgment interest on her $350,000 in punitive damages because, as a matter of law, prejudgment interest is inapplicable to punitive damages.  *See* Defs.' Opposition & Cross Motion at 3.  Defendants rely on *Drennan v. Gen. Motors Corp.*, and *Tiemeyer v. Cmty. Mut. Ins.,Co.*, to argue that "it is well-established in federal law that prejudgment interest cannot be awarded for punitive damages."  *See* Defs.' Opposition & Cross Motion at 3 (citing 977 F.2d at 253; 8 F.3d 1094, 1102 (6th Cir. 1993)). Defendants' reliance on *Drennan* and *Tiemeyer* is misleading.  *Id*.  In both cases, plaintiffs base their claims on ERISA, a statutory scheme that does not allow plaintiffs to collect punitive damages.  *Id*.  The cases establish, therefore, that a court deciding whether to award prejudgment interest need not rely upon the bad faith or punitive actions of defendant in assessing any award. They do not stand for the proposition that a plaintiff may *never* collect prejudgment interest on punitive damages.  *Id*.

Though the Supreme Court has yet to rule on the issue of whether courts may award prejudgment interest on punitive damages, the issue has been considered by some lower courts.

-7-

The minority view appears to be that an award of prejudgment interest on punitive damages is permissible. *See Demarest v. Progressive Am. Ins. Co.,* 552 So. 2d 1329 (5th Cir. 1989) (holding that prejudgment interest is recoverable on an award of exemplary damages); *Latham Seed Co. v. Nickerson Am. Plant Breeders, Inc.*, 978 F.2d 1493 (8th Cir. 1992) (holding that the Michigan Supreme Court would treat an exemplary damage award as a "money judgment," and remanding the case to the district court to enter judgment for interest on the award of exemplary damages). The majority of courts, however, deny the collection of prejudgment interest on punitive damages, finding that such interest is not recoverable on punitive damages because prejudgment interest has a compensatory purpose while punitive damages are essentially meant to punish. *See Casto v. Arkansas-Louisiana Gas Co.*, 562 F.2d 622 (10th Cir. 1977) (finding that prejudgment interest was improperly awarded to Plaintiff on an award of punitive damages); *McDermott v. Omid Int'l*, 723 F. Supp. 1228, 1235 (S.D. Ohio 1988) (citing *Underwater Devices, Inc. v. Morrison-Knudsen Co.,* 717 F.2d 1380 (Fed. Cir. 1983) (holding that prejudgment interest cannot be assessed on the increased or punitive portion of a damage award)); *Bailey v. Container Corp. of Am.*, 660 F. Supp. 1048 (S.D. Ohio 1986) (holding that employee bringing federal age discrimination claim and state law claim against employer is not entitled to prejudgment interest on any award of punitive damages)*; Haskins v. Shelden*, 558 P.2d 487 (Alaska 1976) (the court's decision denying prejudgment interest on punitive damages was proper); *Seaward Constr. Co. v. Bradley*, 817 P.2d 971 (Colo. 1991) ("Based on construction of the controlling statute, we conclude that prejudgment interest cannot be awarded on punitive damages in a personal injury action."); *Cappiello v. Ragen Precision Indus., Inc*., 471 A.2d 432, 438 (N.J. Super. 1984) (finding that, under New Jersey law, the lower court's

award of prejudgment interest on plaintiff's punitive damage award was in error).

Though the nature of Plaintiff's claims in the instant case differ from those brought by the plaintiff in *Bailey v. Container Corp. of Am.*, the reasoning employed by the *Bailey* court is helpful to this Court's analysis. *See* 660 F. Supp. at 1053-56. In *Bailey*, plaintiff brought a federal age discrimination claim and a state law claim against his employer with regard to his discharge. *Id*. at 1048. In ruling on plaintiff's claims, the court found that plaintiff was not entitled to an award of prejudgment interest on his state law claim and that plaintiff's $175,000 punitive damages award was not within the scope of O.R.C. § 1343.03©), the Ohio statute governing the award of prejudgment interest for state law claims. *Id*. at 1054. The court reasoned that its refusal to grant prejudgment interest on an award of punitive damages had a sound basis in legal principles and in common sense, explaining:

> . . . such an award of prejudgment interest would serve neither the purposes of prejudgment interest nor the purposes of punitive damages. Prejudgment interest, of course, is designed to serve as 'compensation or indemnity for the use or detention of money due or found to be due. An award of prejudgment interest is thus intended as compensation for the plaintiff's lost use of funds during the time between the infliction of damage and the plaintiff's recovery. In contrast, punitive damages are not intended to serve any compensatory purpose. 'It must be continually emphasized that punitive damages are assessed over and above that amount adequate to compensate the injured party. As such, they are nothing less than a windfall to any plaintiff who receives them. . . Awarding prejudgment interest on punitive damages, however, serves neither the compensatory purposes of prejudgment interest or the exemplary purposes of punitive damages. Prejudgment interest is purely compensation for the plaintiff's lost use of funds after its cause of action accrues and before its recovery . . . because an award of punitive damages is 'over and above the amount adequate to compensate' the plaintiff, there is no need to award prejudgment interest on the punitive damages in order to compensate the plaintiff further for a delay in payment. Similarly, the exemplary purposes of punitive damages are fully served without the addition of prejudgment interest on those damages. Punitive damages 'by their very nature are unliquidated, and the amount to be awarded rests largely, in the first instance, with the jury.' . . .The addition of prejudgment interest, over and above that amount, would necessarily alter the determination of the jury and yield a total award in excess of what the jury determined was appropriate . . .violat[ing] the principles underlying punitive damages; 'only such

additional amount should be awarded as, taken together with the compensatory damages, will be sufficient for [the] purpose [of punishment.]'

*See id*. at 1055-56 (internal citations omitted). Employing the above reasoning, this Court will *not* award prejudgment interest on Plaintiff's award of prejudgment interest.

Hence, it remains for this Court to determine only whether Plaintiff is entitled to an award of prejudgment interest on the general verdict of $275,000. As noted above, in Ohio, O.R.C. § 1343.03©)) governs the award of prejudgment interest. OHIO REV. CODE § 1343.03©). The statute reads in relevant part:

©)(1) If, upon motion of any party to a civil action that is based on *tortious conduct*, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case, interest on the judgment, decree, or order shall be computed as follows . . .

*See id*. (emphasis added). Plaintiff based her claims on federal law, not Ohio law. Because both claims arise from Defendants' tortious misconduct[8], the Court may apply Section 1343.03©)) to determine the applicability of an award of prejudgment interest on Plaintiff's compensatory damages award. *See Bailey*, 660 F. Supp. at 1056-57 (finding that a verdict based on a federal claim of age discrimination falls within the scope of § 1343.03©)) as clearly as constituting a suit based on "tortious conduct").

The question of whether a party fails to make a good faith effort to settle a case is within the discretion of the trial court. *See Bailey*, 660 F. Supp. at 1056 (citing *Huffman v. Hair Surgeon, Inc.*, 482 N.E.2d 1248 (Ohio 1985)). Before allowing prejudgment interest, the Court

---

[8]As noted above, Plaintiff claimed that Defendants failed to protect her and unlawfully segregated her in violation of her right to Due Process. *See supra* Part II.

-10-

must find "that the party required to pay the money failed to make a good faith effort to settle the case, and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case." OHIO REV. CODE § 1343.03©)(1).

Defendants assert that the Court should deny Plaintiff's motion for prejudgment interest because she failed to show that Defendant did not make a good faith effort to settle the case. *See* Defs.' Opposition & Cross Motion at 5. According to Defendants, at the settlement conference held on May 31, 2005, although the Court and counsel for both parties seemed satisfied that $15,000 would be a reasonable amount to settle the case, it was Plaintiff who ultimately refused to settle. *Id.* at 5. Plaintiff counters, however, that during the parties' Alternative Dispute Resolution ("ADR") proceedings and throughout trial, Plaintiff and her counsel proposed and maintained that they considered a fair settlement to be in the range of $150,000, *not* $15,000 . *See* Pl.'s Reply at 3.

The Ohio Supreme Court has held that a party does not fail to make a good faith effort to settle, pursuant to Section 1343.03©)), when he or she has: "(1) fully cooperated in discovery proceedings; (2) rationally evaluated his risks and potential liability; (3) not attempted to unnecessarily delay any of the proceedings; and (4) made a good faith monetary settlement offer, or responded in good faith to an offer from the other party." *See Villella*, 543 N.E.2d at 471 (citing *Kalain v. Smith*, 495 N.E.2d 572, 574 (Ohio 1986)). Further, if a party holds an objectively reasonable belief that he has no liability, "he need not make a monetary settlement offer," and a lack of good faith means more than poor judgment or negligence; "it imports a dishonest purpose, conscious wrongdoing or ill will in the nature of fraud." *See id.* (citing *Ware v. Richey*, 469 N.E.2d 899, 905 (Ohio 1983)).

-11-

Based upon the record before the Court, the Court does not have ample basis on which to award Plaintiff prejudgment interest under O.R.C. § 1343.03©).  The parties Joint Final Pretrial Order noted that in the parties' settlement efforts, "Defendants made an offer of judgment in the amount of $15,000 pursuant to FED. R. CIV. P. 68 on June 25, 2005.  Plaintiff did not accept that offer, and Defendants did not make or consider making any further offer.  Moreover, Plaintiff made a settlement offer in the amount of $120,000, which Defendants did not accept."  *See* Jt. Proposed Final Pretrial Order at 8.  Plaintiff did not submit affidavits or offer testimony at the hearing that her reasonable settlement demands were constantly rebuffed by the Defendants.  Moreover, the facts before the Court do not show that Defendants acted "with dishonest purpose, conscious wrongdoing" or "ill will."  *See Ware*, 469 N.E.2d at 905 (awarding prejudgment interest to plaintiff where plaintiff offered to settle the case for $20,000 and defendant responded with an offer of $1,000 and where plaintiff submitted numerous affidavits and offered testimony showing that plaintiff's efforts to settle were consistently rebuffed by the defendants).  Because Plaintiff has not shown that Defendant failed to make a good faith effort to settle the case, the Court will not award her prejudgment interest on her compensatory damages award.

### C. Defendants' Cross Motion to Reduce the Jury's Verdict

Defendants also assert that the jury's verdict awarding Plaintiff $625,000 in damages is excessive and should be reduced.  *See* Defs.' Opposition & Cross Motion at 6-8.  The excessiveness of a verdict is primarily a "matter. . . for the trial court which has the benefit of hearing the testimony and of observing the demeanor of the witnesses."  *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 433 (1996) (citing *Wilmington v. J.I. Case Co.*, 793 F.2d 909, 922 (8th Cir. 1986)).  Accordingly, though a "jury's verdict should be accepted if it is one that could

reasonably have been reached," the Supreme Court has explained that, "[w]here [a] verdict returned by a jury is palpably and grossly inadequate or excessive, it should not be permitted to stand; but, in that event, both parties remain entitled, as they were entitled in the first instance, to have a jury properly determine the question of liability and the extent of the injury by an assessment of damages." *See Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000); *Dimick v. Shiedt*, 293 U.S. 474, 486 (1935); *see also, Manning v. Altec, Inc.*, 488 F.2d 127, 132 (6th Cir. 1973) (noting that in federal court, a jury's award will not be reduced as excessive unless it is "beyond the maximum that the jury could reasonably find to be compensatory for a party's loss . . .").

First, Defendants assert that though the jury awarded Plaintiff $25,000 in compensatory damages on her claim that she was wrongfully confined in segregation for two days, the Court should reduce the jury's award and apply O.R.C. § 2743.48(E)(2)(b)[9], providing that a "wrongfully-imprisoned individual" is entitled to receive compensation of $40,330 for each year of imprisonment, which, when pro-rated to Plaintiff's confinement, results in a compensatory

---

[9]The statute provides, in relevant part

(2) In a civil action as described in division (D) of this section, upon presentation of requisite proof to the court, a wrongly imprisoned individual is entitled to receive a sum of money that equals the total of each of the following amounts:. . .
(b) For each full year of imprisonment in the state correctional institution for the offense of which the wrongfully imprisoned individual was found guilty, forty thousand three hundred thirty dollars or the adjusted amount determined by the auditor of state pursuant to section 2743.49 of the Revised Code, and for each part of a year of being so imprisoned, a pro-rated share of forty thousand three hundred thirty dollars or the adjusted amount determined by the auditor of state pursuant to section 2743.49 of the Revised Code. . .

*See* OHIO REV. CODE § 2743.47(E)(2).

award of $220.99.  *See* Defs.' Opposition & Cross Motion at 4.  Defendants have advanced no

argument as to why the statute applies, and the Court finds that Plaintiff is not a "wrongfully-

imprisoned individual" according to the statute's plain language,[10] and was not adjudged as such

by an Ohio common pleas court.  Plaintiff's claim that she was unlawfully segregated in

"security control," is not the same as an assertion that she had been "wrongfully imprisoned,"

and Defendants' arguments based upon the language of O.R.C. § 2743.48(E)(2) are, therefore,

inapplicable.

Next, Defendants assert that the jury's verdict awarding Plaintiff compensatory damages

for her claims of economic loss was excessive because Plaintiff did not testify or present

---

[10]Section 2743.49(A) provides that a "wrongfully imprisoned individual":

(1) The individual was charged with a violation of a section of the Revised Code by an indictment or information prior to, or on or after, September 24, 1986, and the violation charged was an aggravated felony or felony.

(2) The individual was found guilty of, but did not plead guilty to, the particular charge or a lesser-included offense by the court or jury involved, and the offense of which the individual was found guilty was an aggravated felony or felony.

(3) The individual was sentenced to an indefinite or definite term of imprisonment in a state correctional institution for the offense of which the individual was found guilty.

(4) The individual's conviction was vacated or was dismissed, or reversed on appeal, the prosecuting attorney in the case cannot or will not seek any further appeal of right or upon leave of court, and no criminal proceeding is pending, can be brought, or will be brought by any prosecuting attorney, city director of law, village solicitor, or other chief legal officer of a municipal corporation against the individual for any act associated with that conviction.

(5) Subsequent to sentencing and during or subsequent to imprisonment, an error in procedure resulted in the individual's release, or it was determined by a court of common pleas that the offense of which the individual was found guilty, including all lesser-included offenses, either was not committed by the individual or was not committed by any person.

OHIO REV. CODE § 2743.48(A).

-14-

evidence that she incurred medical expenses or lost wages as a result of the incident.  *See* Defs.'
Opposition & Cross Motion at 6.  Defendants contend that because Plaintiff's award of $275,000
compensatory damages was not based upon any quantifiable evidence, it should be "inferred that
any portion of the judgment attributed to economic loss was based, in its entirety or majority on
future economic loss."  *See id*.  At trial, however, Plaintiff based her damages claim on her
allegations that Defendants' actions had caused her severe *emotional distress*, not economic loss.
Further, because no special interrogatories were requested by the defense or presented to the jury
as to a specific delineation of compensatory damages, Defendants have not established that the
jury's compensatory award was in any way based upon future economic loss.

  Moreover, there is neither a factual nor a legal basis on which to question the jury's
decision awarding Plaintiff damages based upon her allegations of emotional injuries.  At trial,
Plaintiff testified as to the severity of the emotional distress she suffered at the hands of
Defendants.  Where an injured party provides the sole evidence of mental distress, he or she
must reasonably and sufficiently explain the circumstances of his or her injury, produce evidence
of demonstrable emotional distress, and establish a causal connection between that distress and
the defendant's actions.  *Biggs v. Vill. of Dupo,* 892 F.2d 1298, 1304 (7th Cir. 1990) (finding that
plaintiff had set forth insufficient evidence to claim damages for emotional distress); *Williams v.
Trans World Airlines, Inc.,* 660 F.2d 1267, 1272-73 (8th Cir. 1981) (damages for emotional harm
are presumed where there is a violation of a constitutional right, but plaintiff must establish proof
of causation).  A plaintiff's testimony, standing alone, may support a claim of emotional distress
precipitated by an alleged constitutional violation.  *Marable v. Walker,* 704 F.2d 1219, 1220
(11th Cir.1983) (holding that plaintiff's own testimony of emotional distress was sufficient to

warrant an evidentiary hearing and award of compensatory damages); *Gore v. Turner*, 563 F.2d 159, 164 (5th Cir. 1977) (compensatory damages for emotional distress may be inferred from the circumstances as well as proven by testimony); *Seaton v. Sky Realty Co., Inc.*, 704 F.2d 634, 636 (7th Cir. 1974) (a plaintiff's emotional distress claim can be inferred from the circumstances or proven by testimony); *Chalmers v. City of Los Angeles,* 762 F.2d 753, 761 (9th Cir.1985) (finding it reasonable for the jury to believe plaintiff's testimony at trial that she had suffered compensable emotional distress because of the city's unconstitutional conduct).

Plaintiff's testimony at trial demonstrated a causal connection between Defendants' actions and her emotional damages.  Accordingly, based on the severity of Plaintiff's allegations and her testimony at trial, Defendants have not met their burden of proving that the verdict was beyond the maximum that the jury could reasonably find to compensate Plaintiff.  Therefore, the verdict stands.

## V. CONCLUSION

Based on the foregoing discussion, the parties' motions are hereby **GRANTED** in part and **DENIED** in part.  Plaintiff's Motion to Amend Judgment to Include Attorney's Fees and Expenses is **GRANTED**.  Plaintiff's Motion to Amend Judgment to Include Prejudgment Interest, and Defendants' Cross-Motion to Reduce Damages are **DENIED**.

**IT IS SO ORDERED.**


    **s/Algenon L. Marbley**
    **ALGENON L. MARBLEY**
    **UNITED STATES DISTRICT JUDGE**

**DATED: April 26, 2006**